**LAW OFFICES OF ROBERT L. TARVER, JR.**
**66 South Main Street**
**Toms River, New Jersey 08757**
**(732) 341-2152 Telephone**
**(732) 341-2153 Facsimile**
Robert L. Tarver, Jr.
Attorney for Plaintiffs
RT (0472)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GARY SAMUELSON, KATHLEEN SAMUELSON and JASON SAMUELSON**, <br><br> Plaintiff, <br> v. <br><br> **THE BOROUGH OF BELMAR**, **THE BOROUGH OF LAKE COMO**; **ANTHONY STENECK,** Individually and under color of State Law, **ANDREW HUISMAN**, Chief Of Police of the Belmar Police Department, Individually and under color of State law; **JOHN and JANE DOES 1-20** (fictitious names); **ABC CORPORATIONS** (fictitious names) <br> Defendants | **Hon.** _____ <br><br><br> **Civil Action No.** _____ <br><br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiffs Gary Samuelson, Kathy Samuelson and Jason Samuelson, by way of Complaint against Defendants say:

### INTRODUCTION

1.      This is an action for damages sustained by a Jason Samuelson, a citizen of the United States, against police officers of the Borough of Belmar, and/Lake Como Police Department(s), who unlawfully arrested, assaulted, harassed and otherwise injured Jason Samuelson.

-1-

2.        This is an action for damages sustained by Gary and Kathy Samuelson, citizens of the United States, against police officers, employees and agents of the Borough of Belmar and/or Lake Como police departments who purposely and unlawfully destroyed their premises, and used improper and unwarranted process constituting an abuse of process through the illegal issuance of summonses and whose retaliatory actions caused damage .

3.        This action is against the Chief of Police of Belmar and/or Lake Como as the supervisory officer responsible for the conduct of the defendants and for the Chief's failure to take corrective action with respect to police personnel whose vicious propensities were notorious, to assure proper training and supervision of the personnel, or to implement meaningful procedures to discourage lawless official conduct, and against the Borough of Belmar/Lake Como as the employer of the police personnel, which is sued as a person under 42 U.S.C. § 1983 .

**JURISDICTION AND VENUE**

4.        The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §1983 and the supplemental jurisdiction of this Court over state claims. Venue is proper within this District because the unlawful practices complained of in this complaint all occurred within the District of New Jersey.

5.        The causes of action alleged, seek to redress the deprivation, under the color of state law, policy and custom, of rights secured by the United States Constitution, the New Jersey Constitution, and the statutory and common laws of the state of New Jersey, and to recover damages, costs, and attorney fees under 42 U.S.C. §§ 1983, 1985(3) and 1988.

6.      The acts, omissions and conspiracies alleged in this complaint were engaged in and carried out by all defendants individually and under color of state law and/or agents, employees and co-conspirators and the police departments of the Borough of Belmar, the Borough of Lake Como by and through their employees, agents, officials and co-conspirators pursuant to governmental policy, practice, and custom and under color of law.

## THE PARTIES

7.      Plaintiff Gary Samuelson was at all times relevant herein, a resident of the State of New Jersey and the Township of Manchester. Gary Samuelson is the biological father of Jason Samuelson and the husband of Kathleen Samuelson.

8.      Plaintiff Kathleen Samuelson was at all times relevant herein, a resident of the State of New Jersey and the Township of Manchester. Kathy Samuelson is the biological mother of Jason Samuelson and the wife of Gary Samuelson.

9.      Plaintiff Jason Samuelson was at all times relevant herein a resident of the State of New Jersey and the Borough of Belmar/Lake Como. Jason Samuelson is the biological son of Gary and Kathy Samuelson.

10.     Defendant Andrew Huisman was at all times relevant herein, the Chief of Police of the Borough of Belmar, the Borough of Lake Como and upon information and belief is a resident of the State of New Jersey. In this capacity, the Chief of Police was:

   a. The commanding officer of Belmar/Lake Como Police Department, and Belmar/Lake Como Police Department officers "John and Jane Doe" as well as

officers from other jurisdictions acting under his supervision and was responsible for their training, supervision and conduct.

b. Responsible by law for enforcing the regulations of the Belmar/Lake Como Police Department and for ensuring that Belmar/Lake Como Police Personnel and other officers under his supervisory control, obey the laws of the State of New Jersey.

c. Acting as the agent, servant, and employee of the defendant Borough of Belmar/Lake Como. This defendant is sued individually and in his official capacity.

11.    Defendant Borough of Belmar is a governmental municipal corporation of the State of New Jersey operating under its laws and at all relevant times, it employed members of the Belmar/Lake Como Police Department. Upon information and belief, the municipality of Belmar and Lake Como share services including the police department which is either legally or loosely merged.

12.    Defendant Borough of Lake Como is a governmental municipal corporation of the State of New Jersey operating under its laws and at all relevant times, it employed members of the Belmar/Lake Como Police Department. Upon information and belief, the municipality of Belmar and Lake Como share services including the police department which is either legally or loosely merged.

13.    Defendant Anthony Steneck was at all times relevant hereto, a police officer with the Borough of Belmar and/or the Borough of Lake Como and upon information and belief is a

resident of the State of New Jersey. He is sued individually and in his official capacity as a Belmar Police Officer.

14.     Defendants John and Jane Does 1-20 are past and present employees, past and present supervisory employees and/or past and present agents of the Borough of Belmar, the Borough of Lake Como, any other governmental agency formed and operating under the laws of the State of New Jersey and/or any subdivision of each who acted individually and under color of State law, to wit, under color of statutes, regulations, policies, customs and usages of the State of New Jersey at all times relevant hereto.  This group also includes policymakers.

15.     Defendants ABC Corporations 1-5 are governmental municipal corporations and entities of the State of New Jersey operating under its laws and who may have employed any of the defendants including John and Jane Does as set forth in paragraph eleven.

16.     This action has been commenced within 2 years of the date of the incident.

17.     Notices of Claim as to Plaintiffs have been filed in this matte and to date there has been no resolution.

18.     At all relevant times and in all their actions, the defendants acted under color of state law and pursuant to their authority as police personnel and municipal officials.

## FACTUAL ALLEGATIONS

19.     Plaintiffs are the owners and operators of Carducci's Pizzeria, a restaurant and ice cream store which was located at 1607 Ocean Avenue in the Borough of Belmar. They owned and operated that business for a period of approximately four years prior to the date of this incident.

20.     On or about October 3, 2017, Kathleen and Gary Samuelson were outside of New Jersey in the State of Nebraska.  Jason Samuelson was in New Jersey and responsible for the operation of the restaurant.  After the restaurant closed for the evening, Jason prepared the restaurant for closing.

21.     Jason's car was parked adjacent to the restaurant in an area which had been reserved, by permit, for establishment owners to park.  In preparation for closing, Jason went to his car and started the car.

22.     After starting the car, Jason returned to the restaurant and turned off all the lights.  At that point he realized that the key to lock the restaurant door was in his car. As a result, Jason walked outside the restaurant to his car in order to retrieve the keys.

23.     When Jason got into the car to get the keys, he noticed a black SUV type vehicle riding by the restaurant.  The SUV slowed and then went past the restaurant.  Then, the SUV turned around and headed directly towards Jason's car.

24.        Jason became concerned that the individual(s) in the SUV might be attempting to rob him.  As a business owner, he was sensitive to the fact that he was carrying money from the day's operating proceeds and that robberies often occur when store owners are closing.

25.        Jason immediately took the keys and went back into the restaurant, locking the door behind him.  He immediately went toward the back room with the intention calling the police.  As he walked toward the back room, however, he heard banging on the door and other loud noises which lead him to believe that someone was about to break into the restaurant.

26.        When he got to the back room, Jason climbed atop the walk-in cooler.  Eventually, he climbed up into the ceiling area when he heard that the individual(s) had gained entry into the restaurant.

27.        When the officers entered the restaurant they began to systematically destroy the restaurant by pulling out counters and throwing items that were inside the restaurant.

28.        As he hid in the ceiling area, Jason was eventually able to determine that the intruders were police officers. When he made this determination, he alerted them that he was in the ceiling area and began to let himself down.  When he alerted them that he was in the roof area, the officers began to grab at the ceiling area causing electrical wires to become dislodged and exposed.

29.      As he stepped down from the ceiling area, police officers grabbed and pulled his feet, causing him to fall to the floor.  Immediately, they began to kick him and strike him about his body.  Officers also sprayed him with a pepper spray type substance.

30.      Although Jason tried to shield his body from the kicks and punches, he did not resist arrest.  There were approximately 6 police officers on the scene at the time of his arrest.

31.      Jason was placed in handcuffs as he lay on the floor at the restaurant. Even though he was handcuffed, the officers continued to kick and punch him.

32.      Police Officer Anthony Steneck kicked Jason as he lay on the ground and repeatedly stepped on his arm.  At one point, as Jason laid on his back, Steneck smashed his boot into Jason's face.  The force of his stomp caused multiple fractures to Jason's facial bones and the sound of the cracking made the other officers recoil in horror.  As a result of being stomped in the face, Jason began to bleed profusely.  He was unable to breathe through his fractured nose and could barely breathe through his mouth due to the effects of the pepper spray.  At no time did the officers provide him with medical attention in order to relieve the effects of the pepper spray.

33.      The effects of a chemical agent spray include "(1) dilation of the capillaries and instant closing of the eyes through swelling of the eyelids, (2) immediate respiratory inflammation, including uncontrollable coughing, retching, shortness of breath and gasping for air with a gagging sensation in the throat, and (3) immediate burning sensations to the mucous membranes, skin and inside the nose and mouth." Park v. Shiflett, 250 F. 3d 843.  The chemical

capsicum spray had the instant effect of causing an intense burning sensation which prevented Jason from being able to see. Jason experienced all of these effects after being sprayed.

34.     After the arrest, officers removed his pants and stripped him down to his underwear. Jason was paraded out of the restaurant in handcuffs and in his underwear covered in blood.

35.     Police officers took Jason from the restaurant and placed him in the rear of a police car. While in the rear of the car he told them repeatedly that he could not breathe and was suffering from the effects of the pepper spray. Eventually he passed out in the police car.

36.     Jason was taken to the Belmar police station and while at the police station, Officer Steneck repeatedly mocked him,  saying "man up" and saying that, "we only get one good broken nose a year that you can hear."  Officer Steneck did this in the presence of other officers.

37.     At one point, an officer who, upon information and belief, was a Sheriff's Officer, retrieved his own personal bottle of water and attempted to assist Jason by giving him the water to rinse out the pepper spray from his face.  The Sheriff's Officer also called on his radio for the emergency medical personnel to come to the police station to aid Jason.

38.     At one point the Sheriff's Officer pulled Officer Steneck into an adjacent room and told him to straighten up and act professionally and that "this was not going to end well for anybody."  At that point, Steneck began act differently and he stopped taunting Jason.

39.     When the EMT's arrived at the police station, Steneck refused to let them treat Jason. The EMT's told Steneck that Jason was coming with them now because he looked like he was severely injured.  The EMT's asked Jason "who did this to you?" and he told them it was the Belmar Police.  Jason had visible bruises on his body.

40.     At the hospital, it was noted that Jason had multiple bruises and lacerations on his body.  There were also imprints of the police officers shoes where he had been kicked and stood upon.

41.     As a result of the unlawful actions of Officer Steneck and other members of the Belmar Police Department, Jason suffered multiple facial fractures, multiple broken ribs, a broken wrist, and (6) six broken teeth.

42.     Jason was born with a defect which required reconstructive surgeries to his nasal cavity.  In two prior surgeries, bone grafts had been performed in order to construct a nose and correct the prior defect.  Those surgeries were performed at a cost of approximately $100,000.00 each.  Officer Steneck's foot stomp to Jason's face completely obliterated the prior surgical reconstructions and has left him with permanent and irreparable injury to his face and nasal cavity.

43.     The conduct of defendants Anthony Steneck, and John and Jane Does 1-20, amounted to the excessive and unwarranted use of force against Jason Samuelson.

44.    The abuse to which Jason was subjected to was consistent with an institutionalized practice of the Belmar/Lake Como Police Departments, which was known and ratified by Chief Andrew Huisman and the Borough of Belmar/Lake Como.

45.    Despite knowledge of these institutionalized practices, the defendants Chief Andrew Huisman and the Borough of Belmar/Lake Como have not taken any effective action to prevent Belmar/Lake Como police personnel from continuing to engage in this type of misconduct.

46.    Defendants Chief of Police and Borough of Belmar/Lake Como had prior notice of the vicious propensities of defendants Officer Anthony Steneck and John and Jane Does 1-20, but took no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority.

47.    The failure of defendants Chief Andrew Huisman and the Borough of Belmar/Lake Como to properly train defendant Officer Anthony Steneck and John and Jane Does 1-20, including the failure to instruct them in applicable provisions of the State Penal Law of the State of New Jersey and the proper and prudent use of force.

48.    Defendant Borough of Belmar/Lake Como authorized, tolerated as institutionalized practices, and ratified the misconduct detailed above by:

  a.    Failing to properly discipline, restrict, and control employees, including defendants Chief Andrew Huisman, Officer Anthony Steneck and John and Jane Does 1-20, known to be irresponsible in their dealings with citizens of the community;

b.      Failing to take adequate precautions in the hiring, promotion, and retention of police personnel, including specifically defendants Chief Andrew Huisman, Officer Anthony Steneck and John and Jane Does 1-20,;

c.      Failing to complete reports as required and forward to the Office of the Monmouth County Prosecutor evidence of criminal acts committed by police personnel;

d.      Failing to establish or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of police misconduct, but instead responding to these types of complaints with bureaucratic power and official denials calculated to mislead the public.

49.      As a consequence of the abuse of authority detailed above, Jason Samuelson, Gary Samuelson and Kathy Samuelson sustained the damages alleged above.

50.      Following the arrest of Jason Samuelson, his parents Gary and Kathleen Samuelson complained to the Belmar/Lake Como Police about the beating of their son.  Thereafter, officials and agents of the Borough of Belmar/Lake Como conspired to retaliate against the plaintiffs by creating conditions which materially interfered with the operation of their business and ultimately caused the plaintiffs to close the restaurant.

51.      Immediately following the arrest of Jason Samuelson, police officers solicited Jersey Central Power and Light to terminate electrical service to the building.  As a result,

approximately $20,000.00 of food inventory was required to be destroyed.  Officials and agents of the Borough of Belmar/Lake Como then improperly and with malicious intent placed signs on the external portion of the restaurant indicating that it was a health hazard.

52.     Officials and agents of the Borough of Belmar/Lake Como wrote numerous summonses for violations which either did not exist or were caused by the actions of the municipality.

53.     The actions of the Officials and agents of the Borough of Belmar/Lake Como were specifically designed to and did in fact interfere with the business opportunity of Plaintiffs. Those actions ultimately forced the closure of Carducci's Pizzeria at a significant loss to Plaintiffs.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Excessive Force in violation of the**
**Fourth and Fourteenth Amendments**

(Against Defendants Steneck and John and Jane Does 1-20)

54.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

55.     Jason Samuelson in this action is a citizen of the United States and all of the individual police officer Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

56.    All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as municipal police officers and their acts or omissions were conducted within the scope of their official duties or employment.

57.    At the time of the complained of events, Jason Samuelson had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force.

58.    Jason Samuelson also had the clearly established Constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

59.    Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

60.    Defendants actions and use of force, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated these Fourth Amendment rights of Plaintiff.

61.    Defendant Steneck and John and Jane Does 1-20's actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Jason Samuelson's federally protected rights.  The force used by these Defendant officers shocks the conscience and violated these Fourteenth Amendment rights of Plaintiff.

62.        Defendants Steneck and John and Jane Does 1-20 unlawfully seized Jason Samuelson by means of objectively unreasonable, excessive and conscious shocking physical force, thereby unreasonably restraining Jason Samuelson of his freedom.

63.        The force used constituted mechanical and physical force and such force caused serious bodily injury to Jason Samuelson.

64.        None of the Defendant officers took reasonable steps to protect Plaintiff from the objectively unreasonable and conscience shocking excessive force of other Defendant officers or from the excessive force of later responding officers despite being in a position to do so.  They are each therefore liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking force of each other officer.

65.        Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Jason Samuelson's federally protected constitutional rights.

66.        The Police Officers did so with shocking and willful indifference to Plaintiff's rights and with their conscious awareness that they would cause Plaintiff severe physical and emotional injuries.

67.        The acts or omissions of all individual Defendants were moving forces behind Jason Samuelson's injuries.

68.     These individual Defendants acted in concert and joint action with each other.

69.     These individual Defendants are not entitled to qualified immunity for the complained of conduct.

70.     The Defendants to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiffs.

71.     As a proximate result of Defendants' unlawful conduct, Plaintiff Jason Samuelson has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically and other special damages related expenses, in amounts to be established at trial.

72.     Plaintiff has suffered injuries both physical and emotional in amounts to be ascertained in trial. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

73.     In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken

maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Retaliation in Violation of the First Amendment
(Against all Defendants and John and Jane Does 1-20)

74.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

75.     At the time of the complained of events, Plaintiffs had the clearly established Constitutional right to be free from retaliation for the exercise of protected speech.

76.     Any reasonable police officer and municipal employee/agent knew or should have known of this right at the time of the  complained of conduct as it was clearly established at that time.

77.     Gary and Kathy Samuelson exercised their constitutionally protected right to question law enforcement and/or engage in protected speech related to the constitutional rights of citizens with respect to decisions to question objectionable police conduct and thew conduct of municipal officials who engaged in retaliation.

78.     Retaliatory animus for Plaintiffs' exercise of his constitutionally protected right to question Police Officers conduct in falsely arresting Jason Samuelson and to question the motivation and actions of municipal officials in taking action to harm their business was a

substantially motivating factor in the unnecessary retaliatory issuance of summonses and the abuse of process by individual Defendants.

79.    The retaliatory actions used against Plaintiffs in retaliation for their protected conduct would deter a person of ordinary firmness from continuing to engage in the protected conduct.

80.    The acts or omissions of all individual Defendants were moving forces behind Plaintiff's injuries.

81.    These individual Defendants acted in concert and joint action with each other.

82.    As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages in amounts to be established at trial.

83.    Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.  There may also be special damages for lien interests.

84.    In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken

maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

**THIRD CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the Fourth, Fourteenth, and First Amendments and in violation of 42 U.S.C. § 1981**
(Against Borough of Belmar/Lake Como and Defendant Huisman)

85.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

86.     At all relevant times herein, Defendant Borough of Belmar/Lake Como, acting through its Police Department, developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to the Plaintiffs' constitutional rights which caused the violation of such rights.

87.     Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

88.     The constitutional abuses and violations by Borough of Belmar/Lake Como, through the actions of its Police Department, Chief Andrew Huisman, Officer Anthony Steneck and Jane Does 1-20, were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendant Borough of Belmar/Lake Como, including the failure: (a) to adequately supervise and train its officers and

-19-

agents, including the Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers; (b) to properly and adequately monitor and discipline its officers, including Defendants; and (c) to adequately and properly investigate citizen complaints of police misconduct, and, instead, acts of misconduct were tolerated by the Borough of Belmar/Lake Como.

89.     The deliberately indifferent training and supervision provided by Defendant Borough of Belmar/Lake Como and Defendant Huisman resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant Borough of Belmar/Lake Como and Defendant Huisman and were moving forces in the constitutional and federal violation injuries complained of by Jason Samuelson.

90.     Upon information and belief, Defendant Borough of Belmar/Lake Como has, acting through its police department, developed, implemented, enforced, encouraged and sanctioned a de facto policy, practice, and/or custom of unlawfully interfering with and/or arresting, without reasonable suspicion or probable cause, harassing and using excessive force against individuals in violation of the Constitution of the United States and the laws of the State of New Jersey.

91.     Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiffs of their constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution.

92.    Defendants have acted with deliberate indifference to the constitutional rights of Jason Samuelson. As a direct and proximate result of the acts as stated herein by each of the Defendants, Jason Samuelson's constitutional rights have been violated which has caused him to suffer physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

93.    As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.  There may also be special damages for lien interests.

94.    Finally, Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 to redress Defendants' above described ongoing deliberate indifference in policies, practices, habits, customs, usages, training and supervision with respect to the rights described herein, and with respect to the ongoing policy and/or practice of the Internal Affairs Bureau of failing to investigate or appropriately handle complaints of the same, which Defendants have no intention for voluntarily correcting despite obvious need and requests for such correction.

<b><u>STATE THEORIES OF RECOVERY</u></b>

95.    On December 29, 2017, the plaintiffs caused a written verified Notice of Claim to be filed with and served on the proper officers, agents, and employees of the defendant Borough of Belmar pursuant to the claims statutes governing these cases.

96.     Plaintiff's claim has been denied by operation of law because more than 60 days have elapsed since the service of the Notice of Claim, and adjustment or payment of the Claim has been neglected or refused.

97.     The acts and conduct alleged above constitute actionable torts under the laws of the State of New Jersey, including the tort of:

    a.  False arrest and imprisonment,

    b.  Malicious prosecution,

    c.  Abuse of process,

    d.  Negligence,

    e.  Gross negligence

    f.  Negligent hiring, training and supervision.

    g.  Deprivation of Civil Rights.

    h.  Conspiracy.

    i.  Interference with Business Opportunity.

**PRAYER FOR RELIEF**

Plaintiff requests that this Court enter judgment for the Plaintiff and against each of the

Defendants and grant:

A. compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B. economic losses on all claims allowed by law;

C. special damages in an amount to be determined at trial;

D. punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial;

E. attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

F. pre- and post-judgment interest at the lawful rate; and,

G. any further relief that this court deems just and proper, and any other appropriate relief at law and equity.


LAW OFFICES OF ROBERT L. TARVER, JR.



By: s/Robert L. Tarver, Jr.
Robert L. Tarver, Jr., Esq.
Attorney for Plaintiff

Dated: September 30, 2019

-23-

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


LAW OFFICE OF ROBERT L. TARVER, JR.

Attorneys for Plaintiff



By:____s/Robert L. Tarver, Jr._____

Robert L. Tarver, Jr. Esq. (RLT 0472)


Dated: September 30, 2019


## CERTIFICATION


I hereby certify that the matter in controversy is not the subject of any other court, arbitration or administrative hearing.


LAW OFFICE OF ROBERT L. TARVER, JR.



By:__s/Robert L. Tarver, Jr._____
Robert L. Tarver, Jr., Esq.


Dated: September 30, 2019

-24-